¶ 1. On October 9, 2001, Antonio Boyd pled guilty to murder and armed robbery. The Newton County Circuit Court accepted Boyd's plea and sentenced Boyd to a life sentence and a consecutive thirty year sentence in the Mississippi Department of Corrections. On October 10, 2004, Boyd filed his pro se motion for post-conviction relief. The circuit court denied Boyd's motion for post-conviction relief and dismissed Boyd's motion without conducting an evidentiary hearing. Aggrieved, Boyd appeals and advances the following four contentions, altered for clarity:
I. WHETHER [BOYD] WAS ENTITLED TO AN EVIDENTIARY HEARING TO DETERMINE IF HIS PLEA WAS KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY ENTERED.
II. WHETHER [BOYD] WAS ENTITLED TO [AN] EVIDENTIARY HEARING TO DETERMINE IF HIS COUNSEL RENDERED IN-EFFECTIVE ASSISTANCE DURING [THE] PLEA PROCESS.
III. WHETHER THERE WAS A FACTUAL BASIS FOR THE PLEA.
IV. WHETHER THE COURT SHOULD [HAVE] HELD [AN] EVIDENTIARY HEARING WHEN [THE] COURT MADE [A] FACTUAL DETERMINATION OF SUPPORTING AFFIDAVITS AND DOCUMENTS WHEN [THE] COURT DISMISSED [BOYD'S] PETITION FOR FAILING TO STATE A CLAIM.
Finding no error, we affirm.
 STANDARD OF REVIEW ¶ 2. "When reviewing a lower court's decision to deny a petition for postconviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous." Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss. 1999). "However, where questions of law are raised the applicable standard of review is de novo." Id.
 ANALYSIS
I. WHETHER [BOYD] WAS ENTITLED TO AN EVIDENTIARY *Page 235 
HEARING TO DETERMINE IF HIS PLEA WAS KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY ENTERED.
 ¶ 3. A guilty plea is considered "voluntary and intelligent" if the defendant is advised about the nature of the charge and the consequences of the entry of the plea. Alexander v. State,605 So.2d 1170, 1172 (Miss. 1992). The defendant must be instructed that a guilty plea waives his or her rights to a jury trial, to confront adverse witnesses, and to protection against self-incrimination. Id.
 ¶ 4. Boyd claims the circuit court erred when it dismissed his motion for postconviction relief. According to Boyd, the circuit court should have conducted an evidentiary hearing to determine whether Boyd entered his guilty plea knowingly, voluntarily, and intelligently. Boyd asks this Court to review that decision. At times, Boyd's argument contains allegations of ineffective assistance of counsel. For the sake of judicial economy, we consider the effectiveness of Boyd's counsel in issue two, below. There is no need to repeat that analysis here.
 ¶ 5. However, Boyd also advances three arguments suggesting that he did not plead guilty knowingly, voluntarily, and intelligently. First, Boyd claims the circuit court did not inform him of his right to confront his accusers. Second, Boyd claims the circuit court did not explain that, by pleading guilty, Boyd waived his right to a direct review on appeal. Finally, Boyd complains that the circuit court did not inform him of the minimum or maximum sentences for armed robbery.
 ¶ 6. We first note that Boyd's petition fails to satisfy the basic pleading requirements in that it does not contain the requisite affidavits of witnesses and copies of documents or records which are required by Section 99-39-91(e) of the Mississippi Code (Rev. 2000). Also, Boyd's petition does not set forth in detail any facts from which the trial court could have determined if good cause existed to excuse Boyd's failure to comply with the stated section of the code. Therefore, it would be entirely proper to conclude that Boyd's omission defeats his claim of entitlement to an evidentiary hearing. See Walton v.State, 752 So.2d 452 (¶ 11) (Miss.Ct.App. 1999).
 A. Boyd's Right to Confront His Accusers. ¶ 7. The transcript shows that the circuit court told Boyd "[i]n a trial by jury, you would have the right to testify, you would have the right to bring witnesses to testify for you, youwould have the right to cross-examine witnesses, but, you willnot have that right by pleading guilty. Do you understand that?" Boyd answered, "[Y]es, sir." Boyd is misplaced in arguing that circuit court failed to warn him that he waived his right to confront his accusers by pleading guilty. Though the circuit court did not use the words "confront your accusers," the circuit court did tell Boyd that he would not be able to cross-examine witnesses by pleading guilty.
 ¶ 8. Additionally, Boyd filed a petition to plead guilty. In that petition, Boyd stated that he understood that if he desired to have a trial, he would have the right to confront any witnesses against him. Further, Boyd acknowledged that, by pleading guilty, he waived his right to confront his accusers. There is no merit to Boyd's claim that he pled guilty unaware that he waived his right to confront his accusers.
 B. Boyd's Right to Direct Review on Appeal. ¶ 9. Boyd claims that the circuit court failed to inform him that he waived his right to direct review by pleading guilty. Again, Boyd is patently misplaced. The *Page 236 
transcript shows that the circuit court informed Boyd of the effect of his plea, as it pertains to direct review on appeal. The circuit court said, "[i]f you had a trial by jury, you would have a right of appeal to the Supreme Court, and, the Supreme Court would review the case to see if there was any error committed in the trial of your case. Do you understand that?" Boyd responded, "[Y]es, sir." The circuit court did not say "you are waiving your right to direct review," but the circuit court did tell Boyd that he would have the right to appeal if he had a jury trial. Boyd decided to forego a jury trial when he pled guilty. The circuit court was clear that direct review was conditioned on the presence of a jury trial. Also, Boyd's petition to plead guilty contains the following statement: "Do you understand that if a jury convicted you, you would have a right to appeal to our Supreme court, but if you plead guilty, you are waiving your right to appeal your case?" Boyd answered, "Yes." This contention is meritless.
 C. Minimum and Maximum Sentences for Armed Robbery. ¶ 10. As to Boyd's allegation regarding the minimum and maximum sentences for armed robbery, the transcript of the plea hearing contains the following exchange:
 The Court: As I stated to you earlier, there's only one punishment for the crime of murder and that's life imprisonment. You are pleading guilty to the crime of armed robbery, which is a consecutive sentence to the life imprisonment sentence. Do you understand that?
Boyd: Yes, sir.
The Court: Do you still want to plead guilty?
Boyd: Yes, sir.
 ¶ 11. The circuit court did not state the minimum and maximum sentences during that exchange. However, in Boyd's petition to plead guilty he noted that, after he pled guilty, the State would recommend sentences of "life on murder 30 years on armed robbery." Additionally, Boyd's petition stated that no one ever told him that the State would recommend less. "A plea is voluntary if the defendant knows what the elements are in the charge against him, including an understanding of the charge and its relation to him, the effect of the plea, and the possible sentence." Griffis v. State, 797 So.2d 299 (¶ 15) (Miss.Ct.App. 2001). This contention is also meritless.
II. WHETHER [BOYD] WAS ENTITLED TO [AN] EVIDENTIARY HEARING TO DETERMINE IF HIS COUNSEL RENDERED INEFFECTIVE ASSISTANCE DURING [THE] PLEA PROCESS.
 ¶ 12. To establish a claim of ineffective assistance of counsel, Boyd must demonstrate (1) a deficiency of his counsel's performance that is (2) sufficient to constitute prejudice to his defense. Swington v. State, 742 So.2d 1106, 1114 (¶ 22) (Miss. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Walker v. State,703 So.2d 266, 268 (Miss. 1997)). In deciding whether Boyd's counsel rendered ineffective assistance, this Court examines the totality of the circumstances surrounding the case. Swington, 742 So.2d at (¶ 22). Boyd faces a "strong but rebuttable presumption that his counsel's conduct falls within a broad range of reasonable professional assistance." Id. at (¶ 23). To overcome this presumption, Boyd must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. *Page 237 
 ¶ 13. Boyd raises ten instances suggesting ineffective assistance of counsel. According to Boyd, his counsel rendered ineffective assistance when he: (1) failed to provide Boyd with adequate information before he pled guilty, (2) coerced Boyd's guilty plea, (3) told Boyd if he did not plead guilty he would get the death penalty, (4) failed to explain the rights Boyd waived when he pled guilty, (5) told Boyd to "just answer the questions the judge asked whether true or not," (6) did not call any witnesses "when a number of them were in the courtroom," (7) did not address Boyd's allegation that the prosecution earwigged the circuit court judge, (8) did not address Boyd's allegation that the circuit court judge conspired with Charles Brackeen's father to convict Boyd, (9) failed to review discovery, and (10) failed to recognize that the discovery "proved police misconduct and that none of the State's witnesses were credible."
 ¶ 14. Originally, Boyd was indicted for capital murder. Boyd acknowledged that he was aware of the possible death penalty or life sentence for his crime. Instead of facing the death penalty, the circuit court sentenced Boyd to a life sentence plus a consecutive thirty year sentence. Boyd's sentence resulted from the plea that his court-appointed counsel negotiated on his behalf.
 ¶ 15. Moreover, during the following exchange between Boyd and the circuit court, Boyd testified that he was satisfied with the advice and services provided by his guilty plea counsel:
 Q. Your attorneys, you are represented by Mr. Shawn Harris, who is a Public Defender of this Judicial District, and, Mr. Andre de Gruy, an officer of the Capital Defense Counsel. Are you satisfied with the way they have represented you in this case?
A. Yes, sir.
 Q. You have any complaint to make to me about their representation of you?
A. No, sir.
 Q. Do you feel your attorneys have investigated the facts of this case sufficiently, they have an understanding of the law, that they are capable and ready to try your case in the event you should ask for a trial?
A. Yes, sir.
Q. Are you satisfied with their services?
A. Yes, sir.
 Q. You have no complaint to make to me about the way they have represented you; is that right?
A. Yes, sir.
 Q. You feel they are competent and able attorneys in this particular case?
A. Yes, sir.
Clearly, Boyd was satisfied with his representation at the time of his plea.
 ¶ 16. Finally, Boyd did not submit any affidavits with his motion for post-conviction relief, other than an alleged affidavit from his plea counsel, Shawn Harris. That affidavit is as follows, with all errors left intact:
 I, P. Shawn Harris, MSB # 9554 does swear that under a penalty of perjury the following statement is true to the best of my knowledge:
 I, P. Shawn Harris, believe that my advice to my client was in error. There was witnesses that could have been called to prove that Mr. Boyd was threatened and/or coerced in the Newton County to provide an statement to Sheriff Jackie Night. There is reason to believe such testimony would produce impeachment as to any confession. My caseload in the counties of Newton, Neshoba, Scott and Leake attributed to my not being able to investigate material *Page 238 
facts and provide the defendant with a bonafide defense.
 There was information passed on to me by my client that I could not follow up on that could have shifted the burden on the Prosecution. I now believe that, I, myself was not effective to my client in persuading him to plead guilty to charge when he wanted a trial by jury.
 Mr. Boyd has shown me the areas of his case that I overlooked and possible defense that could prove him to be innocent that, I, overlooked as well as co-counsel Andre de Gruy may have prejudiced Mr. Boyd's case. Mr. Boyd always asked questions concerning his case but never could grasp any of my explanations and just totally relied on his counsel.
 Mr. Boyd gave me information about one James Miller of Lucedale, MS who as I found out after Mr. Boyd's guilty plea did in fact own a Hazardous Chemical Company and was supplying many people such as the victim Charlie Brackeens with chemicals needed for "METH LABS". This information itself could cast doubt into the juries mind and open the doors to a defense for Mr. Boyd, also proving that Mr. Boyd was only defending himself on that night, and that the whole incident was about drugs.
 Another fact that I should have questioned was misconduct of the police and/or prosecutor for allowing one Mrs. Rex Germany to testify at the Grand Jury proceedings to gain an indictment when she knowingly perjured herself. This could in fact have dismissed the indictment. Then there was the statement of Jamie Abel, given to the investigating officers. He stated that one Prentiss Neese had robbed the victim and the victim was angry at him. If Mr. Boyd had not seen or heard from Jamie Abel or Prentiss Neese since the Sunday before the crime how could he known this unless his side of the story is true.
 This after all is the reason, I signed this affidavit and sent it to, Mr. Boyd, as tries to gain access to the courts.
 ¶ 17. There is a purported signature of Mr. Harris that follows the affidavit, though the affidavit is not properly notarized as a sworn oath. Mr. Harris denied that he prepared or signed the affidavit. Rather, Mr. Harris denied having seen that affidavit. On its face, that affidavit appears to be forged.
 ¶ 18. Regardless, this document is an unsworn statement and not an affidavit. "An affidavit is `[a] written or printed declaration or statement of facts, made voluntarily, andconfirmed by the oath or affirmation of the party making it,taken before a person having authority to administer such oath oraffirmation.'" Wilcher v. State, 863 So.2d 776 (¶ 209) (Miss. 2003) (emphasis added) (quoting Black's Law Dictionary 58 (6th ed. 1990)). At best, this document is Mr. Harris's unsworn statement, as it only shows Harris's alleged signature without the signature of a notary. At worst, this document is a forgery. Regardless, Miss. Code Ann. § 99-39-9(1)(e) requires that Boyd furnish affidavits to support his claims or show cause as to why he could not furnish them. Boyd has not furnished affidavits, nor has he shown cause as to why he could not furnish them. Boyd claimed to be satisfied with his counsel's performance when he entered his guilty plea. He has offered no evidence, other than an unsworn statement that reeks of a forgery. Where a petitioner for post-conviction relief offers only his affidavit, that petitioner's claim of ineffective assistance of counsel is without merit. Lindsay v. State, 720 So.2d 182 (¶ 6) (Miss. 1998).
III. WHETHER THERE WAS A FACTUAL BASIS FOR THE PLEA. *Page 239 
 ¶ 19. Here, Boyd refers to a standard of review reportedly set forth in "Federal Criminal Rule 11." According to Boyd "Federal Criminal Rule 11" requires a state or federal court to ensure there is a factual basis for a guilty plea.
 ¶ 20. It appears that Boyd may be referencing Rule 11 of the Federal Rules of Civil Procedure. F.R.C.P. 11(b)(3) does contain a statement that, by submitting a pleading or motion to a federal court, the submitting party certifies that "the allegations and other factual contentions have evidentiary support." Even so, the federal rules of civil procedure apply to actions within the jurisdiction of the federal courts. The federal rules of civil procedure have no bearing on actions within the jurisdiction of our Mississippi state courts.
 ¶ 21. Our Mississippi Rules of Civil Procedure do contain a counterpart to F.R.C.P. 11. Rule 11 of the Mississippi Rules of Civil Procedure, addresses the effect of affixing one's signature to pleadings, motions, or any other paper filed in a Mississippi state court. M.R.C.P. 11(a). M.R.C.P. 11(b) provides for sanctions if one files a pleading or motion that is frivolous or is filed for the purpose of harassment or delay, among other things. There is no provision in M.R.C.P. 11 that requires a factual basis for a guilty plea.
 ¶ 22. Regardless, Boyd claims that the circuit court had neither a sufficient basis nor adequate evidence to find him guilty. According to Boyd, "[t]he State's case totally relied on, for the most part, illegally received evidence and obviously perjured witness testimony." Boyd also claims that "the State did not prove that he actually or constructively possessed the weapons to prove the element of armed robbery."
 ¶ 23. The possible strength or weakness of the State's potential case against Boyd is of no consequence to the issues presently before this Court. Boyd pled guilty. Accordingly, the State never presented a case against Boyd because there was no reason to present a case against a defendant that admitted guilt when he pled guilty. This issue is meritless.
IV. WHETHER THE COURT SHOULD [HAVE] HELD [AN] EVIDENTIARY HEARING WHEN [THE] COURT MADE [A] FACTUAL DETERMINATION OF SUPPORTING AFFIDAVITS AND DOCUMENTS WHEN [THE] COURT DISMISSED [BOYD'S] PETITION FOR FAILING TO STATE A CLAIM.
 ¶ 24. Boyd claims the circuit court erred when it determined that the purported affidavit of Shawn Harris was a forgery without conducting an evidentiary hearing. However, the circuit court has the authority to dismiss an motion for post-conviction relief when a party fails to state a claim for which relief may be granted. Miss. Code Ann. § 99-39-11(2) (Rev. 2000). Further, where a petitioner for post-conviction relief offers only his affidavit, that petitioner's claim of ineffective assistance of counsel is without merit. Lindsay, 720 So.2d at (¶ 6). As Boyd offered no evidence, other than an unsworn and possibly forged affidavit, the circuit court did not err in dismissing Boyd's motion without conducting an evidentiary hearing. We affirm the decision of the circuit court.
 ¶ 25. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT DENYINGTHE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OFTHIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. *Page 240